**O**

# United States District Court
# Central District of California

| | |
|---|---|
| D.D., a minor, by and through his guardian ad litem, Nailian H., | Case № 2:19-cv-10581-ODW (SKx) |
| Plaintiff, | **ORDER RE ADMINISTRATIVE APPEAL [38][39]** |
| v. | |
| GARVEY SCHOOL DISTRICT, a local educational agency, | |
| Defendant. | |

## I.    INTRODUCTION

Plaintiff D.D. ("Student"), by and through his Guardian Ad Litem, Nailian H., appeals from the decision of Administrative Law Judge Cole Dalton ("ALJ"), of the California Office of Administrative Hearings ("OAH"), pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*  Upon careful consideration of the parties' cross-motions for summary judgment, (ECF Nos. 38, 39), and the Administrative Record ("AR") of the underlying due process hearing, (ECF No. 36), the Court **AFFIRMS IN PART AND REVERSES IN PART** the OAH Decision.[1]

---

[1] Having reviewed the papers filed in connection with the parties' motions, the Court deemed the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.     BACKGROUND

Defendant Garvey School District ("GSD") initially assessed Student in February 2015, when he was about three years old.[2]  (*See* AR 215.)  GSD's initial psychoeducational ("Psyched") assessment reflected Student's development levels as low in communication, adaptive behavior, cognition, and social-emotional skills; his physical skills were an area of relative strength, with age-appropriate fine motor skills in the two- to two-year-six-month range.  (AR 215–21.)  Student qualified under the IDEA for special education and related services under the primary eligibility of intellectual disability, with a secondary eligibility of autism.  (AR 222.)  At all times relevant, Student resided within the boundaries of GSD.  (AR 537.)  For preschool, Student attended a Special Day Class ("SDC") for students with moderate/severe disabilities at GSD's Rice Elementary School.  (AR 222, 235.)

### A.     Preschool 2016–17

Before Student's fifth birthday, GSD held Student's early triennial IEP meeting on January 19, 2017.  (AR 488.)  Student's assessments reflected his development in the cognitively-delayed low range in most areas, but physical skills, particularly gross motor, remained a relative strength.  (AR 435–45, 490, 504, 763.)  The IEP team developed goals and a plan for services, but not as to occupational therapy ("OT").  (*See* AR 491–97.)  The IEP team also discussed that Student's tantrum behavior impeded his learning, but did not include behavior goals.  (AR 491–97, 504.)  Mother consented to the IEP with additions not pertinent here.  (AR 504–05, 507.)  On May 17, 2017, Student's IEP team convened to discuss his approaching transition to kindergarten and agreed Student would attend a moderate/severe SDC at Sanchez Elementary School in GSD.  (AR 268–69.)

---

[2] The statutory period for Student's claims is February 28, 2017, to February 28, 2019.  (*See* AR 1–42.)  Student's January 2017 individualized education program ("IEP") was in place when the statutory period began.  Prior history is provided as relevant to notice of Student's development.

**B.      Kindergarten 2017–18**

On January 12, 2018, before Student turned six, GSD convened Student's annual IEP meeting.  (AR 470–87.)  The IEP team reviewed Student's strengths and progress, discussed his continuing tantrum behavior, and proposed new goals in communication, vocation, mathematics, and academics.  (AR 482–83.)  GSD offered continued placement in the moderate/severe SDC at Sanchez, with adjustments to goals and services in light of Student's development.   (AR 470–87.)   Mother requested and signed a plan for assessments in the areas of OT, assistive technology ("AT") with augmentative and alternative communication ("AAC"), and functional behavior ("FBA").  (AR 486.)  In a letter dated February 6, 2018, Mother consented to the IEP's implementation, objected in part, and requested additions including behavior goals and a behavior intervention plan ("BIP").  (AR 468–69.)

On  March  5,  2018,  the  IEP  team  convened  to  discuss  the  completed assessments and proposed IEP amendments.  (AR 287–300.)  GSD's speech language pathologist ("SLP") Jennifer Strom conducted the AT/AAC assessment.   (AR 287, 414–26.)   Strom found that Student possessed basic skills that showed he had the potential to learn to use an AT device for functional communication.  (AR 287.)  She proposed a thirty-day trial of an AT device, after which the IEP team would reconvene to  discuss  the  results.   (AR 287.)   GSD's  occupational  therapist  Marina  Toranian conducted the OT assessment.  (AR 410–13, AR 853.)  Toranian determined Student had motor control and sensory processing deficits, with sensory seeking behaviors and fine motor skills delayed in the two to three-year-old range.  (AR 287, 410–13, 866.)  Toranian proposed goals and services in these areas.  (AR 287–90, 292, 868.)  GSD's board certified behavior analyst ("BCBA") Mary Hum conducted an FBA with the target behavior of Student's tantrums.  (AR 427–34.)  Hum found Student's behaviors were often attempts at communication to gain access or attention.  (AR 433–34.)  She found  Student's  providers  had  been  inadvertently  reinforcing  his  tantrums  by comforting or soothing him.  (AR 433, 1286–90.)  She proposed a BIP incorporating

the anticipated AT device and developed functionally equivalent replacement behaviors ("FERBs") for Student to use instead of tantrumming. (AR 287, 296–98, 1252–57.) Mother consented to implementation of the IEP amendment. (AR 300.)

Strom trained staff on the AT device and they conducted the thirty-day trial in May 2018. (AR 324–26, 1149–51.) Strom attempted unsuccessfully to schedule training with Mother. (AR 1171.) Although GSD scheduled an IEP meeting to review the AT trial and provide Mother with training, Mother cancelled and the school year ended before they could be rescheduled. (AR 1153–54, 1157, 1174.)[3]

On July 9, 2018, Student's attorney, on behalf of Mother, disagreed with GSD's assessments and requested independent educational evaluations ("IEEs") in psyched, speech/language, functional behavior, AT, and OT. (AR 303.) GSD did not respond. (Decision 22; GSD Statement of Disputed Facts 79, ECF No. 40-1.)

## C.  First Grade 2018–19

Student continued in Sanchez's SDC for first grade. (*See* AR 328–64.) The IEP team convened on October 24, 2018, to review the results of the AT/AAC device trial. (AR 324.) SLP Rebekah Taylor provided AT support throughout the 2018–19 school year and reported that Student's progress using the device was slow. (AR 317–19, 324.) Mother consented to the IEP amendment. (AR 325.)

In September 2018, Dr. B.J. Freeman, an expert in the field of autism spectrum disorders, assessed Student and prepared a psychological assessment report. (*See* AR 305–16.) The IEP team convened in December to review Freeman's assessment. (AR 326.) Freeman observed Student for less than two hours on one day during the first week of school; she opined Student was prompt dependent, had regressed, and was not meeting his goals; she proposed a year-round intensive forty-hour per week

---

[3] The ALJ found the delay in providing the AT device to Student, from March 13, 2018, when Mother consented, to May 5, 2018, did not negatively impact Student's access to his education. (AR 556 ("OAH Decision" or "Decision" at 22), ECF No. 36-26.) All subsequent citations to the OAH Decision are to the pagination at the center bottom of each page.

applied behavior analysis ("ABA") program instead of Student's SDC. (*See* AR 313–16, 326; Decision 23.)

On January 11, 2019, when Student was almost seven, GSD held Student's annual IEP meeting. (AR 328–64.) The IEP team discussed Student's strengths and weaknesses, behaviors, and progress; Mother's concerns; adjustments to services and goals; and Student's use of the AT device. (AR 358–60.) Student's targeted tantrums had decreased, his attention increased, and the team continued the BIP as it had been effective. (*See* AR 359, 1266–69.) GSD offered continued placement in the moderate/severe SDC at Sanchez. (AR 349–50, 353, 359.)

On February 11, 2019, Mother agreed to implement the January 11, 2019 IEP but she denied that it provided a free and appropriate public education ("FAPE") and requested changes to the IEP. (AR 362.) On February 28, 2019, GSD declined most of Mother's requested changes. (AR 365–68.)

**D.    Due Process Hearing and Appeal**

On February 28, 2019, Student filed a request for an administrative due process hearing with the OAH. (AR 1–42.) After five days of testimony from twelve witnesses, including two experts testifying on behalf of Student, the ALJ issued a seventy-page opinion.[4] (Decision 1–70.) She found Student prevailed in part on OAH Issue Two and in full on OAH Issue Three, and GSD prevailed on all remaining issues. (*Id.* at 69–70.)

Student appealed to this Court, seeking reversal as to portions of the OAH Decision on OAH Issues Two, Three, and Four. (*See* Compl. ¶ 13, ECF No. 16.) The parties filed cross-motions for summary judgment, which are fully briefed. (*See*

---

[4] The hearing proceeded on five issues: (1) whether GSD failed to timely conduct its March 5, 2018 AT/AAC assessment; (2) whether GSD failed to timely and appropriately conduct its February 28, 2018 FBA and March 5, 2018 OT assessment ("OAH Issue Two"); (3) whether GSD failed to timely respond to Student's July 9, 2018 request for IEEs in the areas of speech/language, functional behavior, OT, and AT ("OAH Issue Three"); (4) whether GSD failed to offer appropriate goals, related services, supports, and placement in the areas of communication, OT, behavior, social skills, adaptive and daily living skills, and health ("OAH Issue Four"); and (5) whether GSD materially implemented AT technology according to the March 5, 2018 IEP. (Decision 2–3.)

Student Mot. Summ. J. ("SMSJ"), ECF No. 39; GSD Opp'n SMSJ, ECF No. 43; Student Reply, ECF No. 45; GSD Mot. Summ. J. ("DMSJ"), ECF No. 38; Student Opp'n DMSJ, ECF No. 41; GSD Reply, ECF No. 44.)[5]

### III.    LEGAL STANDARD

The IDEA provides that "[a]ny party aggrieved by the findings and decision" reached through the state administrative hearing process "shall have the right to bring a civil action with respect to the complaint . . . in a district court of the United States." 20 U.S.C. § 1415(i)(2).   In reviewing an administrative decision under the IDEA, district courts review the administrative proceeding records, hear additional evidence if the parties request it, and "grant such relief as the court determines is appropriate," based on the preponderance of the evidence.   20 U.S.C. § 1415(i)(2)(C).   This modified *de novo* standard requires the Court to give the administrative proceedings "due weight" and not "substitute [its] own notions of sound educational policy for those of the school authorities which [it] review[s]." *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995).   After such consideration, the court "is free to accept or reject the findings in part or in whole." *Id.* at 891; *M.C. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1194 n.1 (9th Cir. 2017) (noting that courts must "actually examine the record to determine whether it supports the ALJ's opinion").

Though not a true motion for summary judgment, the appeal of an IDEA administrative decision is properly styled and presented by the parties in a summary judgment format. *Wartenberg*, 59 F.3d at 892.   When a court has before it all evidence regarding disputed issues, it may make a final judgment based on the preponderance of evidence on what is essentially a stipulated record. *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472 (9th Cir. 1993).   The petitioning party bears the burden of proof at the administrative hearing, *Schaffer v. Weast*, 546 U.S. 49, 62

---

[5] To the extent a party's argument at different stages of briefing is substantially identical, the Court cites to only one instance of a given argument.   (*See, e.g.*, SMSJ 16–18; Student Opp'n DMSJ 2–5.)

(2005), and the party challenging the administrative decision bears the burden in the district court, *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 910 (9th Cir. 2009).

## IV.   DISCUSSION

Student argues the Court should review the OAH Decision *de novo*, while GSD contends it is entitled to substantial deference.  (*See* SMSJ 14–16; DMSJ 3.)

On the issues, Student seeks reversal of three specific points.  First, Student appeals a subpart of OAH Issue Two, on the grounds that the ALJ erred by finding that GSD conducted a timely OT assessment.  (Compl. ¶¶ 13, 14–20.)  Next, Student appeals three subparts of OAH Issue Four, regarding the appropriateness of GSD's offered goals, services, supports, and placement, as to: (i) OT for the entire statutory period, (*id.* ¶¶ 13, 27–35); (ii) behavior for the portion of the statutory time period from March 6, 2018, to February 28, 2019, (*id.* ¶¶ 13, 36–42); and (iii) the remedy as to behavior for the portion of the statutory time period from February 28, 2017, to March 5, 2018, (*id.*).  Finally, although the ALJ found Student prevailed on OAH Issue Three, as GSD failed to respond to Student's request for IEEs, Student appeals the ALJ's remedy on this issue on the grounds that it does not redress GSD's violation.  (*Id.* ¶¶ 13, 21–26.)  GSD seeks affirmance.  (*See* DMSJ 3.)

## A.   "Due Weight"

A court must give "due weight" to administrative judgments regarding educational policy.  *Ojai*, 4 F.3d at 1472.  How much weight is due is a matter of the court's discretion, though the Ninth Circuit instructs that more weight should be given if the findings are "thorough and careful" or pertain to witnesses' credibility.  *Wartenberg*, 59 F.3d at 891; *Amanda J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 889 (9th Cir. 2001).  Specifically, an ALJ's decision is entitled to "substantial weight" when it "evinces his [or her] careful, impartial consideration of all the evidence and demonstrates his [or her] sensitivity to the complexity of the issues presented."  *Ojai*, 4 F.3d at 1476.

The ALJ held the administrative hearing over five days, (Decision 1), received testimony from twelve witnesses, including two experts for Student, (*see* AR 907, 1182, 1393, 1565, 1678 (daily witness indices)), considered hundreds of pages of argument and evidence, (*see* AR 146–533), and actively engaged in questioning, (*see generally* AR 678–1677 (transcripts); GSD Opp'n SMSJ 2 n.1). She issued a seventy-page single-spaced decision in which she thoroughly examined the evidence and arguments, rendered reasoned credibility determinations,[6] reviewed the relevant legal standards, and found in part for each party on carefully articulated issues. The Court has conducted an independent review of the AR and finds that, with one exception discussed below, the ALJ's decision is thorough and careful and therefore entitled to substantial deference. *See R.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 937 (9th Cir. 2007) ("[A] hearing officer's findings [are] thorough and careful when the officer participates in the questioning of witnesses and writes a decision containing a complete factual background as well as a discrete analysis supporting the ultimate conclusions." (internal quotation marks and brackets omitted)).

**B.     Timeliness of OT Assessment (OAH Issue Two)**

Student contends the ALJ erred in finding that Student failed to prove GSD's March 5, 2018 OT assessment was untimely. (SMSJ 16–18.)

### 1.     *Deference Due*

As a threshold matter, Student argues the Court's review of this issue should be *de novo* because the ALJ relied on evidence outside the record, erroneously found Student abandoned the issue, and ignored Student's evidence. (SMSJ 1, 15–16.) Nothing indicates the ALJ relied on evidence outside of the record. The facts relevant to Student's objection are found in Student's exhibits, the 2015 IEP (Student Ex. 7, AR 222) and Psyched Report (Student Ex. 4, AR 215). As such, this argument does not diminish the Court's deference. However, the ALJ erred in finding Student

---

[6] The ALJ gave the testimony of Student's experts, Dr. B.J. Freeman and Elizabeth Schwandt, less weight than Student's providers because she found they had limited knowledge of Student or lacked credibility as to Student's particular profile. (Decision 23–24, 36.)

"abandoned his argument [on this issue], by not addressing it in his closing brief." (Decision 45.)  Student argued the OT assessment's untimeliness in his closing brief, albeit briefly on page twenty-seven.  (*See* AR 205.)  As the ALJ's holding on the OT assessment's timeliness appears to rest solely on Student's abandonment (*see* Decision 45), the Court reviews this issue *de novo*.  The Court nonetheless maintains deference to the thorough and careful findings of fact and credibility determinations.

### 2.    *Analysis*

The IDEA requires a school district to assess a student in all areas related to a suspected disability.  *See* 20 U.S.C. § 1414(b)(3); 34 C.F.R. § 300.304(c)(4).  Once a school district is on notice that a child has displayed symptoms of a disability, the district must assess to determine a child's educational needs.  *See Timothy O. v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105, 1118–20 (9th Cir. 2016).  Failure to conduct a timely or appropriate assessment is a procedural violation and may amount to the denial of a FAPE if it "result[s] in the loss of educational opportunity, or seriously infringe[s] the parents' opportunity to participate in the IEP formulation process, or . . . cause[s] a deprivation of educational benefits."  *J.G. v. Baldwin Park Unified Sch. Dist.*, 78 F. Supp. 3d 1268, 1284 (C.D. Cal. 2015).

Student contends GSD should have seen as early as January 2017 that Student needed an OT assessment because the January 2017 IEP Meeting and 2017 Psyched Report revealed Student's sensory-seeking and fine motor deficits.  (SMSJ 17–18.)  However, the Court finds a preponderance of the evidence supports that GSD's March 2018 OT Assessment was timely.[7]

---

[7]  The parties' citations to the record, and particularly the transcripts, are inconsistent, often inaccurate, and have made it extremely difficult to identify the evidence cited.  For instance, rather than cite to a unique identifier like the AR Bates stamp or CMECF pagination, Student cites the transcripts as "Doc. 36-27, 84:19–86:4."  (Student Reply 7.)  However, page 84 appears <u>five times</u> in document 36-27, none of which contains obviously relevant testimony.  GSD provides bracketed descriptions in its citations, but while some are descriptive (and unfortunately lengthy), others are so generic as to be meaningless.  (*See, e.g.*, GSD Statement of Uncontroverted Facts No. 3 ("Doc. 36-7, p.1 ['Previous Assessment,' District January 2015 psychoeducational assessment]"); *id.* No. 76 ("Doc. 13 pp. 12–22 [IEP]"), ECF No. 38-1.)  And while the parties, at times, do cite to the AR

In 2015, before Student turned three years old, initial GSD assessments reflected his physical skills were a relative strength.[8]  (AR 215–237.)  His fine motor skills rated at the age-equivalent of two years and six months, although this was inconclusive because Student was not cooperative during the assessment. (AR 218–19.)  He could turn board-pages, scribble on paper, and had adequate grip strength, but could not yet stack blocks and had not had an opportunity to write, color, or cut.  (AR 220.)  OT services and supports were not recommended because Student demonstrated the strength and skills necessary to access an academic environment. (AR 235.)

In January 2017, just before Student turned five, the evidence shows Student was demonstrating slow progress in motor development.  (*See* AR 435–45, 490, 504–05.)  The 2017 Psyched Report reflects that Student could hold writing utensils in an age-appropriate palmer grasp, make marks, spontaneously draw lines and circles, stack blocks, string beads, and was beginning to hold scissors.  (AR 443, 490.)  He was not yet imitating lines and sometimes used both hands, but he was starting to exhibit hand dominance.  (AR 443.)  On some measures, however, his fine motor skills fell in the range between two and three years old.  (AR 442 (2–3 year-old fine motor), 443 (2–2.5 year-old developing skills).)  The IEP team proposed a prewriting goal to imitate lines and circles.  (AR 490, 495.)  By the January 2018 IEP meeting, when Mother requested OT assessment, Student had met this goal.  (AR 482–83.)

While some evidence reflects areas of weakness, other evidence reveals age-appropriate motor skills and emerging academics.  On balance, the record supports that Student was making progress and developing motor skills as of the January 2017 IEP.  When Student's progress stalled the following year, GSD

---

pagination, the Bates stamp is located directly beneath the CMECF header, obliterating both unique identifiers.  As a result of these indecipherable and unreliable citation practices, the Court has independently reviewed the AR to identify evidence pertaining to the parties' arguments.

[8] Although the 2015 Psyched Report and IEP fall outside the statutory time period, they are relevant regarding notice of Student's suspected areas of disability.  *See Timothy O.*, 822 F.3d at 1119–20.

assessed OT, identified fine motor and sensory deficits, and recommended related services and supports.  Student contends GSD should have known by the January 2017 IEP that Student needed to be assessed in the area of OT because of his sensory seeking behaviors.  (*See* SMSJ 17.)  But the Court does not find evidence of sensory seeking behaviors in the January 2017 record such as would necessarily put GSD on notice at that time of a need for an OT assessment, and Student has not clearly identified any sufficient to unbalance the preponderance of evidence discussed above.

The Court finds a preponderance of the evidence supports that GSD did not fail to timely assess Student in the area of OT.  Accordingly, the OAH Decision is **AFFIRMED** as to this issue.

## C.    Appropriate Goals, Services, Supports, and Placement (OAH Issue Four)

The ALJ found Student did not meet his burden to prove GSD failed to offer appropriate goals, services, supports and placement in most areas, but did establish that GSD failed in the area of behavior from February 28, 2017, to March 5, 2018. (Decision 50–65.)  On appeal, Student argues the ALJ's decision should be reversed on this issue as to OT for the statutory period and as to behavior from March 6, 2018, to February 28, 2019.  (*See* SMSJ 20–26.)  Student also seeks reversal of the remedy for GSD's failure in the area of behavior from February 28, 2017, to March 5, 2018. (SMSJ 25–26.)  Finally, Student argues the ALJ erred in finding GSD prevailed as to the entirety of Issue Four.  (SMSJ 23.)

The IDEA guarantees all disabled children a FAPE "consist[ing] of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction."  *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 188–89 (1982); *see* 20 U.S.C. § 1401(9).[9]   Related services shall be provided

---

[9] In reviewing compliance with the IDEA, courts "review for procedural compliance with the statute, and for whether the program is reasonably calculated to enable the child to receive educational benefits."  *Wartenberg*, 59 F.3d at 891 (citing *Rowley*, 458 U.S. at 206–07).  As Student's arguments as to OAH Issue Four focus on educational benefit, so too does the Court's analysis.

when they are necessary for the pupil to benefit from his or her educational program. Cal. Educ. Code. § 56363(a).

Under the IDEA, states must provide disabled students an educational program that confers a "basic floor of opportunity," but Congress "did not impose . . . any greater substantive educational standard than would be necessary to make such access *meaningful*." *Rowley*, 458 U.S. at 192, 201 (emphasis added). While this requires something more than "de minimis" progress, an educational program must only be "reasonably calculated to enable a child to make progress *appropriate in light of the child's circumstances*." *Endrew F. v. Douglas Cnty. Sch. Dist.*, 137 S. Ct. 988, 1001 (2017) (emphasis added); *see E.F. v. Newport Mesa Unified Sch. Dist.*, 726 F. App'x 535, 537 (9th Cir. 2018) (confirming the Ninth Circuit standard requiring "some educational benefit" is consistent "with *Endrew's* clarification of *Rowley*").

### 1.    OT—February 29, 2017 to February 28, 2019

The ALJ did not err in finding the weight of evidence demonstrated GSD "addressed [Student's] fine motor and sensory needs appropriately, that he obtained educational benefit[,] and was offered a FAPE at all relevant times." (Decision 56.) The ALJ correctly concluded "Student did not meet his burden of proving that he required more or different [OT] services during the statutory time frame" as "the evidence demonstrated Student made progress appropriate in light of his circumstances." (*Id.* at 54–55.)

As discussed above, the Court finds a preponderance of the evidence demonstrates that Student made progress commensurate with his abilities from February 2017 through March 2018 in the areas of fine motor and sensory input. *See supra* IV.B.2. Additionally, a review of the transcripts confirms the ALJ's finding that the only occupational therapist to testify, Toranian, did not testify that Student required OT services prior to the March 2018 assessment. (Decision 55; *see generally* AR 848–904, 1538–62.) Similarly, the AR supports that, by March 2018, Student could hold a pencil, liked to write, made lines and circles independently, required

assistance for tracing, and met his academic pre-writing goal for imitating lines.  (*See* Decision 55; AR 410–13, 472, 482.)

After the March 5, 2018 OT assessment, GSD offered appropriate OT goals and services.  (AR 287, 289–90, 292.)  Toranian developed goals to address Student's fine motor skills and sensory seeking behaviors.  (AR 287, 289–90, 868, 1542–43.)  One goal utilized a sensory diet to address Student's sensory seeking behaviors and increase his attention to task.  (AR 289, 866, 869, 887–88.)  Another goal focused on improving grasp and tracing to address Student's fine motor skills.  (AR 290, 868–69, 1542.)  Toranian testified that Student made progress on both goals, albeit slow.  (AR 330, 332–33, 1543, 1553–57.)  Student became overwhelmed easily and required frequent sensory breaks, and access to a sensory corner calmed Student and led to increased attentiveness.  (AR 330, 866–69, 888.)  The IEP team also implemented a pressure vest, which similarly helped to increase Student's attention and tolerance. (AR 330, 1555–56.)  And Student made progress in the safe use of scissors, as he developed improved grasp.  (AR 330, 863, 893, 1557.)

The ALJ found Toranian, who testified to Student's progress, a credible witness; this credibility determination is given substantial deference.  *See Amanda J.*, 267 F.3d at 889.  Student offered no witness that effectively rebutted Toranian's testimony. (*See* Decision 23–24, 36 (giving less weight to Student's expert witnesses, in part because they were less familiar with Student than his providers).)

Student contends the ALJ improperly relied on evidence outside the statutory time period by considering evidence of Student's levels in 2015.  (SMSJ 22.)  But the ALJ also compared Student's development levels at the January 2017 IEP to his levels and skills demonstrated at the January 2018 IEP, and this evidence is sufficient to support the ALJ's conclusions.  (*See* Decision 55.)  Student also argues that his failure to *meet* the 2018 OT goals by January 2019 is proof that he made *zero progress* during this time.  (SMSJ 23.)  Not so.  As discussed above, the evidence demonstrates that Student progressed on the OT goals and related skills, even though he did not achieve

100% success by January 2019.  (AR 330, 332–33.)  The ALJ correctly rejected this argument.  (Decision 56.)

In reviewing the ALJ's decision, the district court is not required to be certain that it was correct; a preponderance of the evidence is all that is required.  *Wartenberg*, 59 F.3d at 893.  Here, a preponderance of the evidence supports the ALJ's conclusion that GSD appropriately addressed Student's OT needs.  (Decision 56.)  Accordingly, the OAH Decision is **AFFIRMED** as to this issue.

### 2.   *Behavior—March 6, 2018 to February 28, 2019*

Turning to the area of behavior and the time period of March 6, 2018, to February 28, 2019, the ALJ did not err in finding "[t]he weight of the evidence demonstrated that Student made slow progress, commensurate with his abilities, in the area of behavior, once the target of his behaviors was identified and appropriately addressed in March 2018."  (Decision 58.)

Hum conducted an FBA in the spring of 2018, resulting in a BIP implemented following the March 5, 2018 IEP.  (AR 287, 427–34.)  She identified Student's target behaviors as tantrums, resulting because he wanted attention or access, and she proposed appropriate FERBs specific to Student.  (AR 287, 296–98, 433–34, 1206, 1251–52.)  After the IEP team discussed implementing functional communication using the AT device, Hum modified the BIP to incorporate functional behavior using the AT device as well.  (AR 287, 297.)  To gain access or attention, Student could select an icon on the device and show it to an adult, point to a preferred item, take an adult to the item or activity, and sign "more" to request more of something.  (AR 297, 330, 398,[10] 1284.)  Student's teachers implemented this "total communication" system throughout the end of the 2017–18 school year and during the 2018–19 school year, in

---

[10] Although the March 2019 FBA Report is dated after the statutory time period, Hum gathered data and conducted observations for the Report within the time period.  (AR 405–06.)  Additionally, Student argued successfully for the Report's inclusion in the record during the OAH Hearing, as being relevant to Student's behavior.  (*See* AR 1210–15.)

addition to teaching Student to use the AT device, thus enabling Student to access his education.  (AR 1283–88.)

A preponderance of the evidence supports the ALJ's finding that implementing the BIP resulted in Student's progress in the area of behavior.  The ALJ correctly noted the significance of Student's providers no longer reinforcing his maladaptive behaviors.  (Decision 57; AR 1283–88.)  Student participated more, could sit and attend longer, was more easily redirected, responded to two-to-three word instructions, engaged in the classroom's token economy, and began demonstrating functional use of the AT/AAC device, which in turn decreased tantrum behaviors.  (AR 330, 398, 408, 1224, 1266–68.)  At the January 2019 IEP meeting, the team agreed to continue the BIP because it was found to be effective for Student.  (AR 359.)  This weight of evidence supports the ALJ's conclusion.

Student challenges the Decision, arguing the ALJ omitted facts.  The ALJ prepared a thorough and careful seventy-page opinion detailing relevant factual findings and providing discrete analysis as to the issues.  The AR is nearly 1700 pages and includes testimony from twelve witnesses, many of whom the ALJ questioned herself.  "In cases, like this one, where there is an extensive record and testimony, the ALJ is not required to mention every detail when discussing the record . . . ."  *J.B. v. Tuolumne Cnty. Superintendent of Schs.*, No. 1:19-cv-00858-NONE-EPG, 2020 WL 3287365, at *26 (E.D. Cal. June 18, 2020), *R&R adopted in part, rejected in part on other grounds*, 2021 WL 1221468 (E.D. Cal. Mar. 31, 2021).  Student also contends that the March 2018 BIP was inappropriate because it required use of the AT device but Student lacked foundational skills necessary to access it.  (SMSJ 25.)  Even were this so, GSD employed "total communication" with Student, allowing him to access his educational program as he developed the skills for using the AT device.  (*See* AR 1266–68, 1283–88.)  The ALJ reasonably gave Student's experts' testimony on this point less weight due to their lack of familiarity with Student, (Decision 23, 36), and these credibility determinations are entitled to deference, *Amanda J.*, 267 F.3d

at 889.  Student's remaining arguments are equally unpersuasive.

As noted, the Court need not be certain that the ALJ's decision is correct, *see Wartenberg,* 59 F.3d at 893, and here a preponderance of the evidence supports the ALJ's conclusions.  Accordingly, the OAH Decision is **AFFIRMED** as to this issue.

### 3.    *Behavior, Remedy—February 29, 2017 to March 5, 2018*

Student argues the ALJ erred in awarding three hours of staff training[11] instead of individual compensatory education as a remedy for GSD's failure on OAH Issue Four in the area of behavior from February 28, 2017, to March 5, 2018. (SMSJ 25–26.)  Student seeks Dr. Freeman's recommended program of an intensive ABA placement for up to two full time years, forty hours per week, in place of Student's SDC placement.  (Decision 23–24; SMSJ 26; AR 313–16.)  Alternatively, Student briefly suggests compensatory ABA services, ten hours per week for forty-two weeks, the number of weeks Student contends GSD failed to address his behavior needs.  (Student Opp'n DMSJ 10.)

ALJs have broad latitude to fashion equitable remedies appropriate for the denial of a FAPE, in light of the purpose of the IDEA and the circumstances.  *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369, 370 (1985); *Student W. v. Puyallup Sch. Dist.*, 31 F.3d 1489, 1496 (9th Cir. 1994).  "Compensatory education services can be awarded as appropriate equitable relief."  *Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1033 (9th Cir. 2006).  "Appropriate relief is relief designed to ensure that the student is appropriately educated within the meaning of the IDEA." *Puyallup*, 31 F.3d at 1497; *R.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1125 (9th Cir. 2011) ("Compensatory education . . . seeks to make up for [lost] educational services" and put the child in the position they would have had without the violation.). "The courts have discretion on how to craft the relief and '[t]here is no obligation to provide a day-for-day compensation for time missed.'"  *Park*, 464 F.3d at 1033.

---

[11]  The behavioral training implemented for all preschool and elementary school staff totaled ninety-three person hours. (GSD Opp'n SMSJ 22 n.29.)

The ALJ found "Student persuasively demonstrated that [GSD] failed to appropriately address his behavior needs from February 28, 2017[,] until March 5, 2018." (Decision 57.)  As a remedy for this failure, the ALJ found staff training to be an appropriate remedy.  (*Id.* at 68.)  She reasoned GSD's failure during this time period resulted most significantly from Student's teachers and staff "not understand[ing] the cause of Student's behaviors" and "inadvertently reinforc[ing]" them by comforting him.  (*Id.* at 57.)  Despite being on notice of his tantrum behaviors and the impediment they posed to Student's learning, Student's GSD IEP team members did not recommend an FBA or propose behavior goals or supports.  (*Id.* at 68.)  However, once an FBA was completed and a BIP in place, GSD staff received behavior training specific to Student and began properly responding to his negative behaviors.  Student began to make progress regarding his behavior.  As Student was then receiving an appropriate educational program in the area of behavior, the ALJ exercised her discretion to address the root of the violation by ordering staff training, an appropriate compensatory remedy.  *See Park*, 464 F.3d at 1033 (finding no abuse of discretion to award teacher training designed to compensate student by better training his teachers to meet his particular needs).  As there is no obligation to provide compensatory education services directly to a student, *id.* at 1034, the Court does not find an abuse of discretion.[12]  Accordingly, the OAH Decision is **AFFIRMED** as to this issue.

### 4.  *Prevailing Party*

Finally, Student contends the ALJ erred in finding GSD to be the sole prevailing party as to OAH Issue Four.  (SMSJ 23; Decision 70.)  The OAH Decision is clear that GSD did not prevail as to the entirety of Issue Four.  Rather, "Student met his

---

[12] Furthermore, even had the Court found an abuse of discretion, or determined that individual compensatory education was warranted, Student fails to support the appropriateness of his requested remedies.  He does not explain why ten hours per week is appropriate, and the Court agrees with GSD that the full-time forty-hour per week intensive ABA program proposed by Freeman is not Student's least restrictive environment, in light of the record.  *See Sacramento City Unified Sch. Dist. v. Rachel H.*, 14 F.3d 1398, 1404 (9th Cir. 1994) (citing 20 U.S.C. § 1412(5)(B)).

burden of proof on this issue as to the time period of February 28, 2017[,] through March 5, 2018 [and] did not meet his burden of proof on this issue as to the remaining statutory period." (*Id.* at 58.)   Therefore, Student prevailed in part on OAH Issue Four, as to the area of behavior from February 28, 2017, through March 5, 2018.  To the extent the ALJ found otherwise, the OAH decision is **REVERSED**.  GSD remains the prevailing party as to the remainder of OAH Issue Four.

**D.     IEE, Remedy (OAH Issue Three)**

Student asserts the ALJ erred with respect to the remedy on OAH Issue Three because, although the ALJ found GSD violated the IDEA by failing to respond to Student's request for IEEs in speech/language, functional behavior, OT, and AT/AAC, the ALJ ordered only a speech/language assessment.  (*See* SMSJ 18–19; Compl. ¶ 21.) GSD argues the ALJ appropriately considered all relevant factors in fashioning the remedy awarded and Student failed to prove that he is entitled to the requested IEEs. (*See* GSD Opp'n SMSJ 18–20; GSD Reply 7.)

If a parent disagrees "with the school district's evaluation of their child, they have a right to obtain an [IEE] at public expense." *Timothy O.*, 822 F.3d at 1111 (internal quotation marks omitted).  If a parent requests an IEE, the public agency must, "without unnecessary delay," file a due process complaint to show the appropriateness of its assessment or fund the requested IEE. *Baquerizo v. Garden Grove Unified Sch. Dist.*, 826 F.3d 1179, 1185 (9th Cir. 2016).  A district that fails to file or fund may waive the right to contest a student's request for an IEE; it also violates the IDEA's procedural safeguards. *See J.P. v. Ripon Unified Sch. Dist.*, No. 2:07-CV-02084-MCE-DAD, 2009 WL 1034993, at *7 (E.D. Cal. Apr. 15, 2009).

"While some procedural violations can be harmless, procedural violations that substantially interfere with the parents' opportunity to participate in the IEP formulation process . . . 'clearly result in the denial of a [FAPE].'" *Timothy O.*, 822 F.3d at 1118 (quoting *Amanda J.*, 267 F.3d at 892).  Thus, courts have found the failure "to respond without unnecessary delay to a parent's request for an IEE . . .

independently actionable and compensable under the IDEA." *William S. Hart Union High Sch. Dist. v. Romero*, No. CV 13-3382-MWF (PLAx), 2014 WL 12493766, at *6 (C.D. Cal. Apr. 9, 2014) (first citing *Rowley*, 458 U.S. at 206–07; and then citing *Amanda J.*, 267 F.3d at 890); *see also Pajaro Valley Unified Sch. Dist. v. J.S.*, No. C 06-0380 PVT, 2006 WL 3734289, at *3 (N.D. Cal. Dec. 15, 2006) (finding district's "unexplained and unnecessary delay . . . waived its right to contest Student's request for an [IEE] and *by itself* warrants entry of judgment in favor of Student . . . ." (emphasis added)).

Here, Student disagreed with GSD's assessments and requested IEEs in the areas of speech/language, functional behavior, OT, and AT/AAC.  GSD failed to file or fund, or otherwise respond.  The ALJ appropriately found GSD's unexplained failure to file or fund constituted a procedural violation that "effectively prevented Parents from any meaningful . . . participation in the IEP development process." (Decision 49.)

Nevertheless, the ALJ erred when she awarded only a speech/language IEE. The ALJ concluded that Student failed to prove the other assessments were inappropriate or to "demonstrate a deprivation of educational benefit" resulting from GSD's failure to respond.  (*Id.* at 48–49, 67.)  However, whether the assessments were appropriate or Student's educational benefit undiminished does not change that GSD's silence denied Student a FAPE by significantly impeding Parents' participation in the IEP process.  *See Schaffer*, 546 U.S. at 60–61 (discussing that IEEs are designed to enable parents to participate and ensure they have a realistic opportunity to access expertise equivalent to the district).  "Procedural violations that interfere with parental participation in the IEP formulation process undermine the very essence of the IDEA." *Amanda J.*, 267 F.3d at 892.  Thus, the ALJ erred in finding the "purposes of the IDEA would not be served by ordering" the requested assessments.  (Decision 67.)

The Court agrees with Student that GSD's unexplained delay in failing to respond to Mother's IEE request waived its right to contest the request and, *by itself*,

warrants an award of the requested IEEs. Accordingly, the OAH Decision is **REVERSED** as to the remedy on OAH Issue Three. GSD is **ORDERED** to fund, in addition to the speech/language IEE ordered by the ALJ, IEEs in the areas of functional behavior, OT, and AT/AAC.

## V. CONCLUSION

For the reasons discussed above, the Court **AFFIRMS IN PART** and **REVERSES IN PART** the OAH Decision. (ECF Nos. 38, 39.) Specifically, the Decision is:

- **AFFIRMED** as to **OAH Issue Two** (timely OT assessment);
- **AFFIRMED in part** and **REVERSED in part** as to **OAH Issue Four** (appropriate goals, services, supports, and placement):
  - o **AFFIRMED** as to **OT** for the statutory period;
  - o **AFFIRMED** as to **Behavior** from March 6, 2018, to February 28, 2019;
  - o **AFFIRMED** as to the **remedy** in the area of **Behavior** from February 28, 2017, to March 5, 2018; and
  - o **REVERSED in part** as to the finding that GSD was the sole prevailing party—Student also prevailed in part on Issue Four as to Behavior from February 28, 2017, to March 5, 2018; and
- **REVERSED in part** as to **OAH Issue Three** (IEEs) as to the **remedy**—GSD is **ORDERED** to fund IEEs in the areas of speech/language, functional behavior, OT, and AT/AAC. Judgment will issue.


**IT IS SO ORDERED.**

June 16, 2021

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**